THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* HERBERT KOERBER, Appellant.

Crimes — murder in first degree — trial — voluntary intoxication as a defense — charge — trial of defendant charged with felony murder — refusal to instruct jury as to lower degrees of homicide proper only where no possible view of facts would justify any verdict except conviction as charged or acquittal.

1. On trial of a defendant charged with murder when engaged in the commission of a felony, a refusal to instruct the jury as to the lower degrees of homicide is proper and the jury should be instructed to find the defendant guilty of murder in the first degree or to acquit only where no possible view of the facts would justify any other verdict except a conviction of the crime charged or an acquittal.

2. Under section 1220 of the Penal Law, while no act of a person in a state of voluntary intoxication shall be deemed less criminal by reason of his having been in such condition, the judge should, whenever the actual existence of any particular purpose, motive or intent is a necessary element to constitute a particular species or degree of crime, allow the jury to take into consideration the question of intoxication in determining the existence of such particular intent and, if it should be of the opinion that the deliberation or premeditation necessary to constitute murder in the first degree did not exist, the crime may be reduced to a lower degree of murder or, in the absence of any intent to kill, then to manslaughter in some of its degrees.

3. When criminal intent in general is all that need be established, a drunken defendant is treated as if he knew the consequence of his acts; but where a particular or specific intent must be established, if the jury find that the mind of the defendant was so obscured by drink that he was incapable of forming that intent, it may justify itself in the reduction of a charge. The jury, however, should proceed with the utmost caution before arriving at the conclusion that the voluntary intoxication of an accused person has in any way altered the character or grade of his criminal act.

4. Robbery is a particular species of crime of which " the actual existence of any particular * * * intent is a necessary element " within the meaning of section 1220 of the Penal Law. It follows that on trial of a defendant charged with murder in the first degree for killing when engaged in the commission of a robbery, where there is evidence that defendant had been drinking heavily and was intoxicated at the time so that he did not know what he was doing, the jury should have been instructed " to take into consideration the fact that the accused was intoxicated at the time in determining the intent with which he committed the act."

5. It was error, therefore, that this court cannot overlook, for the trial court merely to instruct the jury that voluntary intoxication would not excuse a criminal act committed while under the influence of intoxication and to refuse to charge as to the different degrees of homicide and the rule of reasonable doubt as applied to lower degrees of crime and to instruct the jury as to intoxication as a defense in the language of the Penal Law. The evidence presented a serious question affecting a substantial right which should not have been withheld from the consideration of the triers of fact.

(Argued December 1, 1926; decided December 31, 1926.)

APPEAL from a judgment of the Queens County Court, rendered April 9, 1926 upon a verdict convicting the defendant of the crime of murder in the first degree.

*Jacob A. Visel, Edward U. Green* and *Harry A. Horton* for appellant. The court below committed substantial error in refusing to charge the various degrees of homicide. (*People* v. *Marwig,* 227 N. Y. 382; *People* v. *Smith,* 232 N. Y. 239; *People* v. *Marendi,* 213 N. Y. 600; *People* v. *Collins,* 234 N. Y. 355; *People* v. *Schleiman,* 197 N. Y. 383; *People* v. *Van Norman,* 231 N. Y. 454.)

*Richard S. Newcombe, District Attorney (Charles W. Froessel* of counsel), for respondent. The trial court committed no error in refusing to charge in reference to the various degrees of homicide, as upon the facts of this case the defendant was either guilty of first degree murder as a matter of law, or was entitled to an acquittal. (*People* v. *Nichols,* 230 N. Y. 222; *People* v. *Schleiman,* 197 N. Y. 383; *People* v. *Giro,* 197 N. Y. 152; *People* v. *Chapman,* 224 N. Y. 463; *People* v. *Huter,* 184 N. Y. 237; *Buell* v. *People,* 78 N. Y. 492; *People* v. *Meegan,* 104 N. Y. 529; *People* v. *Cohen,* 223 N. Y. 406; *People* v. *Jernatowski,* 238 N. Y. 188; *Sparf & Hansen* v. *U. S.,* 156 U. S. 51; *People* v. *Sanchez,* 24 Cal. 17; *State* v. *Young,* 67 N. J. L. 223; *People* v. *Nunn,* 120 Mich. 530; *Fertig* v. *State,* 100 Wis. 301.)

POUND, J. Defendant was convicted of murder in the first degree for killing one Mahairas when engaged in the commission of a felony (Penal Law, § 1044, subd. 2), to wit, the crime of robbery, upon the person killed. The homicide occurred about five o'clock in the morning of Sunday, March 21, 1926. Defendant testified in his own behalf in substance that he had been drinking heavily and that he was intoxicated at the time so that he did not know what he was doing. He narrated with considerable detail the occurrences of the night, both before and after the homicide, and the jury might properly have found that his intoxication was not such as to affect his responsibility for his acts had it been permitted to pass on the question. It was, however, instructed merely that voluntary intoxication would not excuse a criminal act committed while under the influence of intoxication. A request to charge the jury as to the different degrees of homicide and the rule of reasonable doubt as applied to lower degrees of crime (Penal Law, § 610; Code Crim. Pro. §§ 390, 444) was refused and also a request to instruct the jury as to intoxication as a

defense substantially in the language of section 1220 of the Penal Law. The question of voluntary intoxication as defense for crime is thus fairly, although not with any great degree of precision, presented on the record, both on the facts and the law.

On the question of murder in the first degree where the killing is committed from a deliberate and premeditated design to effect the death of the person killed (Penal Law, § 1044, subd. 1), it has been held that, when the case contains testimony which if believed might have led the jury to conclude that at the time of the shooting defendant was intoxicated to a greater or less degree, the question of intoxication should be presented and explained to the jury and, if the question is a serious one and such instructions are omitted, a judgment of conviction should be reversed even in the absence of a proper request by the counsel for the defendant. (*People* v. *Van Zandt,* 224 N. Y. 354.)

The view is expressed that in felony murder the rule is different; that a refusal to instruct the jury as to the lower degrees of homicide is proper and that the jury should be instructed to find the defendant guilty of murder in the first degree or to acquit. Such is the rule only " where  \*  \*  \*   no possible view of the facts would justify any other verdict except a conviction of the crime charged or an acquittal." (*People* v. *Schleiman,* 197 N. Y. 383, 390; *People* v. *Van Norman,* 231 N. Y. 454.) We are, therefore, free to enter upon a consideration of voluntary intoxication as a fact for the consideration of the jury in such cases.

Penal Law, section 1220 (formerly Penal Code, § 22), provides:

" No act committed by a person while in a state of voluntary intoxication, shall be deemed less criminal by reason of his having been in such condition. But whenever the actual existence of any particular purpose, motive or intent is a necessary element to constitute a

particular species or degree of crime, the jury may take into consideration the fact that the accused was intoxicated at the time, in determining the purpose, motive or intent with which he committed the act."

The effect of this section is discussed in *People* v. *Leonardi* (143 N. Y. 360) where the indictment was for a deliberate and premeditated killing. At common law, said the court, if a man made himself voluntarily drunk it was no excuse for any crime he might commit when he was in that condition, and he had to take the responsibility of his own voluntary act in becoming intoxicated. The fact was not to be considered even on the question of premeditation. Under the Code section, however, while no act of a person in a state of voluntary intoxication shall be deemed less criminal by reason of his having been in such condition, the judge should, whenever the actual existence of any particular purpose, motive or intent is a necessary element to constitute a particular species or degree of crime, allow the jury to take into consideration the question of intoxication in determining the existence of such particular intent and, if it should be of the opinion that the deliberation or premeditation necessary to constitute murder in the first degree did not exist, the crime might be reduced to a lower degree of murder or, in the absence of any intent to kill, then to manslaughter in some of its degrees. That is, the *law* does not, as in the case of insanity, deem the act less criminal by reason of the voluntary intoxication of the accused, but the jury may take into consideration the fact of intoxication in determining the element of intent where a particular intent is a necessary element of the crime charged, not as calling for an acquittal, where the act charged, minus the particular intent, remains a criminal act, but as tending to reduce the character or grade of the offense in a proper case.

In a recent English case (*Director of Public Prosecutions* v. *Beard*, [1920] A. C. 479) the subject is fully considered.

(See 8 Holdsworth's History of Eng. Law, 442, 443.) The learned lords agreed that at common law voluntary intoxication was regarded as an aggravation of the offense but held that the rule had been relaxed and that, while voluntary intoxication cannot excuse the commission of a crime, it may be taken into consideration where a specific intent is an essential element of the offense charged in order to determine whether the defendant had in fact formed the specific intent necessary to constitute the particular crime. The court pointed out, as did this court in the *Leonardi Case* (*supra*), that in the case of drunkenness the test of criminal responsibility is not the same as in the case of insanity, to be considered by the jury only if so extreme as to obliterate knowledge on the part of the defendant as to what he was doing or that he was doing wrong.

In brief then, the rule may be thus stated: When criminal intent in general is all that need be established the drunken defendant is treated as if he knew the consequence of his acts; but where a particular or specific intent must be established, if the jury find that the mind of the defendant was so obscured by drink that he was incapable of forming that intent, it may justify itself in the reduction of a charge.

Generally speaking murder in the first or second degree connotes the specific or particular intent to kill, while manslaughter in the first or second degree is felonious homicide when the intent to kill is absent. But when one engaged in the commission of a felony, his mind being fatally bent on mischief but without a design to effect death, kills a human being, at common law, the killing is said to be with malice aforethought and so murder, and the Penal Law attaches to the act the consequences of murder in the first degree. The People on an indictment for felony murder may fail to establish that defendant was engaged in the commission of a felony, but may offer evidence tending to show that the

homicide was committed by him when engaged in a misdemeanor, which would reduce the offense to manslaughter in the first degree (Penal Law, § 1050, subd. 1) or in the commission of a trespass or other invasion of a private right, which would reduce it to manslaughter in the second degree. (Penal Law, § 1052, subd. 1.) Where the facts would justify a verdict based on such a theory, the degrees of manslaughter should be submitted to the jury. Thus, where the felony charged in the indictment is burglary and the entry is under circumstances or in a manner not amounting to a burglary, the offense is unlawfully entering a building, which is a misdemeanor. (Penal Law, § 405.) Could it be said with reason that on an indictment for murder in the first degree for killing when engaged in the commission of burglary, the offense might not thus be reduced to manslaughter in the first degree? Or, if it were shown that the killing took place before a building was entered while defendant was engaged in a trespass or other invasion of a private right, that the offense might not be thus reduced to manslaughter in the second degree? Nothing that was said in the *Schleiman* or the *Van Norman* case was pertinent to such a situation and nothing would be more at variance with our method of administering criminal justice than to say that such a defense presented no alternative but acquittal.

We now come to consider the charge against defendant as affected by his intoxication. Disregarding for the moment the statutory modification of common-law rules and principles and the fine distinctions not applicable hereto, we find that the gist of robbery is larceny by force from the person (Penal Law, §§ 2120, 2122), and that the gist of larceny is the taking and carrying away of personal property of another with the specific intent to steal such property (Penal Law, § 1290). If on an indictment for larceny or robbery the testimony leaves uncertain the intent with which the accused took the

property, the jury should be instructed to give the defendant the benefit of the doubt. (*Thorne* v. *Turck*, 94 N. Y. 90, 95.) That the intent is usually to be inferred from the act does not change the rule that a taking without intent to steal is not larceny at common law. No statutory larceny is involved in the consideration of the instant case.

Robbery, as thus defined, is " a particular species * * * of crime " of which " the actual existence of any particular * * * intent is a necessary element " within the meaning of Penal Law, section 1220. It follows that the jury should have been instructed " to take into consideration the fact that the accused was intoxicated at the time, in determining the * * * intent with which he committed the act." The fact that the accused did not have the intent to rob would not mean that an acquittal should follow. It is conceivable, for example, that a youth whose mind was befuddled by drink might intend merely to stage a hold-up and yet be guilty of some degree of homicide. He might be so frightened by resistance as to shoot in the heat of passion, the emotion of fright, and thus be guilty of manslaughter in the first degree, or conceivably even of murder in the second degree. The jury would have to say under proper instructions as to the degrees of crime.

It is common knowledge that intoxicated men, although not in normal control of their faculties, do deliberate and premeditate and form a particular intent and commit criminal acts as they might not do if they were sober. Intoxication as such does not mitigate the offense. The question is not whether the accused was drunk but whether his intoxication was of such a character that it destroyed the power to form the particular intent which is a necessary element of the crime charged. The jury should, therefore, proceed with the utmost caution before arriving at the conclusion that the voluntary intoxication of an accused person has in any way altered the character

or grade of his criminal act. (*People* v. *Leonardi, supra.*) His own evidence on the point need not be accepted as true even if uncontradicted. We may doubt whether the evidence of intoxication adduced by this defendant would carry sufficient weight with an intelligent jury to affect its verdict. It presented, however, a serious question affecting a substantial right which should not have been withheld from the consideration of the triers of fact. We cannot say that, with proper instructions, " but one decision and that adverse to the defendant could reasonably have been reached." When the alternative presented was conviction of murder in the first degree or acquittal, a conscientious jury would scarcely bring itself to a verdict of not guilty in this case. If they had been instructed that other verdicts were permissible, they might or might not have found the defendant guilty of a lesser degree of felonious homicide. We, therefore, cannot overlook the failure of the court to give proper instructions (*People* v. *Marendi,* 213 N. Y. 600, 619), as we might if we could reach the conclusion that there was a lack of sufficient evidence to go to the jury that defendant was, in the only relevant sense, too drunk to form the specific intent of committing robbery.

The judgment of conviction should be reversed and a new trial ordered.

ANDREWS, J. (dissenting). Under the charge of the court we are here concerned solely with robbery. If guilty of that crime the defendant was guilty of murder in the first degree. He could be guilty of nothing else. If not guilty of robbery the jury was told that they must acquit him. Surely he may not complain because in that case they were not permitted to convict him of some lesser degree of homicide.

To be guilty of robbery it is essential that the defendant should have acted with a general criminal intent. I

assume that means the intent to take the property of the deceased in his presence, against his will, by means of force or fear. Ordinarily from the occurrence itself the jury might and should have inferred this intent. He may, however, negative this presumption. He may give evidence tending to show that he was insane at the time. Or that he was playing a joke on a friend. Or that he was so drunk that he could not and did not form any such intent. Thus a question of fact may be presented and if the jury have a reasonable doubt caused by this explanation he should be acquitted.

The issue is as to the existence of this intent, and the testimony offered by the defendant must be relevant to this precise issue. If it does not tend to show that the accused failed to know the nature and quality of his act or to show that he did not know that it was wrong, there is no question of insanity to be submitted to the jury. If it does not tend to show that he was so intoxicated that he did not and could not form an intent to rob, again there is no question for them.

In my judgment testimony of intoxication to the extent that would make the defendant's intent a question of fact is wholly absent from this case. It should, at least, tend to show at the time of the robbery a complete absence of conscious volition — an ignorance of his acts and purposes. Therefore, the trial court was right in refusing to submit any such question to the jury. The general rule that " no act committed by a person while in a state of voluntary intoxication, shall be deemed less criminal by reason of his having been in such a condition " is applicable.

It is quite true that in a limited number of cases another rule applies. Now and then crimes are divided into degrees or species dependent upon the motive, purpose or intent of the criminal. His legal as well as his moral guilt varies with his mental attitude. Such a division is made as regards some kinds of homicide. So as to

assault. Ordinarily, however, while other crimes may be divided into degrees, these degrees are not made dependent on any such purpose, motive or intent. There are degrees in arson, in burglary, in larceny, in forgery, in robbery itself, but no such test of guilt applies. The degree depends upon other circumstances. To convict there must be merely the usual general intent to commit the crime.

It is only in the exceptional cases of the first class that the jury may take into consideration the fact that the accused was to some extent intoxicated at the time in determining the question of the degree of guilt.

In my opinion the judgment of conviction should be affirmed.

CRANE, J. (dissenting). I concur with Judge ANDREWS but desire to add the following:

That the defendant shot and killed the deceased has been proved beyond any reasonable doubt. The evidence shows that the killing happened while the defendant was committing the crime of robbery — it was a holdup case — in which the defendant at the point of a pistol attempted to rob the deceased.

The attempted defense was that the deceased attacked the defendant leaving the store, and in the mixup the defendant's pistol went off accidentally. No one takes any stock in this defense, not even the defendant's counsel, who admitted on the argument that the defendant was guilty of a crime.

A discussion has arisen over the effect of liquor upon the defendant and whether the judge fully covered the law regarding. intoxication as affecting crime and the degrees of crime. In my judgment the discussion is immaterial to this case, as the evidence clearly shows that the defendant, if he had been drinking, was not so intoxicated as to lessen the crime, but rather to aggravate the seriousness of it. In the first place, he is the only

one who states that he had been drinking, and then on the stand as a witness remembers every detail of his conduct and actions on the night in question. He boldly states how a few hours previous to killing the deceased, he had held up a restaurant keeper at the point of a pistol — pointed a gun at him and told him to hold up his hands. The money he took he says he did not intend to steal, that it was a kind of joke; the kind that the people of this State do not appreciate. It was no joke to the restaurant keeper. Later, the defendant details how he entered the place of the deceased and what happened there. Surely the defendant when he had sufficient mind and intelligence to recollect months afterwards all that happened on the night of the shooting, was not under such influence from liquor as to lessen in any way his criminal acts, or deprive him of criminal intent. His intoxication may have excited him and weakened his judgment, but it did not absolve him from the responsibility which the law attaches to one who kills another in an attempt to take his property.

I am for affirmance for these reasons.

CARDOZO, McLAUGHLIN and LEHMAN, JJ., concur with POUND, J.; ANDREWS, J., dissents in opinion in which HISCOCK, Ch. J., concurs and in which CRANE, J., concurs in memorandum.

Judgment reversed, etc.